## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

| | |
|---|---|
| JANINE ZAMORA, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| vs. | ) ) |
| DEMERT BRANDS, LLC, | ) ) |
| Defendant. | ) ) |
| | ) |

CLASS ACTION

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiff Janine Zamora ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant DeMert Brands, LLC ("Defendant") and alleges, based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters based upon, *inter alia*, the investigation of counsel, as follows:

### NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased for normal household use Defendant's dry shampoo products that are defective because they contain benzene, and which were formulated, designed, manufactured, marketed, advertised, distributed, and sold by Defendant.

2.      Defendant distributes, markets, and sells to consumers across the United States, both in retail establishments and online, including in Florida, certain dry shampoo products under

the name "Not Your Mother's" (the "Products"). The Products, including the ones identified below, are adulterated and/or contaminated with benzene, a known human carcinogen.

3.    Plaintiff and putative Class members each purchased, and they or their household members used, Not Your Mother's dry shampoo products—the same types that were specifically identified by an independent testing agency as exceeding the U.S. Food and Drug Administration's ("FDA") permissible levels of benzene in "cosmetics" and "over-the-counter drugs"[1]:

| Brand | UPC | Lot | Description |
|-------|-----|-----|-------------|
| Not Your Mother's | 688047130500 | 21090 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130098 | 21145 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130296 | 21070 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130975 | 20356 | Triple Threat Brunette Dry Shampoo - Hint of Brunette Tinted Powder - 7 oz |
| Not Your Mother's | 688047130296 | 21188 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130517 | 21141 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz |
| Not Your Mother's | 688047130500 | 21124 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130500 | 21179 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130517 | 21181 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz |

---

[1] *See* Valisure Citizen Petition on Benzene in Dry Shampoo Products ("Citizen Petition") at 13-17 (available at https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf) (last accessed November 3, 2022).

| Not Your Mother's | 688047130098 | 20280 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130500 | 21063 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130296 | 21009 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130951 | 20353 | Blonde Moment Dry Shampoo - Hint of Blonde Tinted Powder - 7 oz |
| Not Your Mother's | 688047132290 | 21194 | Clean Freak Refreshing Dry Shampoo - Original - 1.6 oz |
| Not Your Mother's | 688047130296 | 21195 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130098 | 21235 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130487 | 21232 | Clean Freak Tapioca Dry Shampoo - Warm Sugar - 7 oz |
| Not Your Mother's | 688047130098 | 21210 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130098 | 21277 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130098 | 21211 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130296 | 21317 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz u |
| Not Your Mother's | 688047130296 | 21221 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |

4.     The Products are defective because they contain significant amounts of the chemical benzene, a known human carcinogen; yet despite the presence of benzene, Defendant represents that the Products are safe and effective for their intended use.

5.     The presence of benzene in Defendant's Products was not disclosed to consumers in the Products' labelling, advertising or otherwise, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth

below) and seek injunctive relief and restitution for the full purchase price of the Products. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

7.      The Court has personal jurisdiction over Defendant because Defendant is incorporated and headquartered in the state of Florida.

8.      Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Defendant has marketed, advertised, and sold the Products in this District, and Defendant has caused harm to Plaintiff and other class members who reside in this District.

## PARTIES

9.      At all relevant times, Plaintiff was a citizen and resident of Pompano Beach, Florida. Plaintiff has purchased for household use several Not Your Mother's dry shampoo products, including Not Your Mother's Clean Freak Refreshing Dry Shampoo – Original, approximately every 6 months since approximately 2017, from either Publix Super Markets or Target in Pompano Beach, Florida and Fort Lauderdale, Florida. She has spent an approximate total of $80 on Defendant's Products. Based on the false and misleading claims by Defendant, at the time of purchase, Plaintiff was unaware that Defendant's Products were adulterated with

benzene. Plaintiff purchased Defendant's Products on the assumption that the labeling of Defendant's Products was accurate and that the products were unadulterated, safe, and effective. Plaintiff would not have purchased Defendant's Products had she known they contained benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

10.     Defendant is a Florida limited liability company with its principal place of business located in Tampa, Florida. Defendant is a beauty products company that "creates and maintains over 125 products within 12 product lines."[2] Defendant launched the "Not Your Mother's" brand in 2008 and it "can now be found in over 25,000 stores nationwide . . . with 31 items and more continually in the works."[3]

## FACTUAL ALLEGATIONS

11.     Upon information and belief, Defendant manufactures, markets, advertises, labels, distributes, and sells Not Your Mother's dry shampoo, including the Products.[4]

12.     Dry shampoo products are considered cosmetics that are regulated by the FDA.[5]

13.     On October 31, 2022, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address dangerous levels on benzene in dry shampoos based upon rigorous testing the organization had conducted on a number of dry shampoo products.[6]

---

[2] https://www.demertbrands.com/about/ (last visited Nov. 3, 2022).
[3] *Id.*
[4] *Id.*; *see also* https://www.demertbrands.com/not-your-mothers-haircare/ (last visited Nov. 3, 2022).
[5] Citizen Petition at 1.
[6] *See id.*

14.     Valisure found that certain dry shampoo products, including some of the Products, contain benzene, with values up to 158 parts per million ("ppm").[7]

15.     In its Citizen Petition, Valisure shows data from the analysis of benzene by directly sampling contaminated air after spraying dry shampoo products, which suggests potential for short- and long-term inhalation exposure to high levels of benzene.[8] The presence of this known human carcinogen in dry shampoo products that are regularly used indoors and in large volumes makes this finding especially troubling.[9]

16.     Benzene is used primarily in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years.

17.     According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[10] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC").[11] Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[12] As noted by the IARC:

---

[7] *Id.* at 2, 13-17.

[8] *Id.*

[9] *Id.*

[10] Benzene, Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf. (emphasis in original).

[11] Benzene, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018), https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf.

[12] *Id.*

In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on sufficient evidence of carcinogenicity in humans, sufficient evidence of carcinogenicity in experimental animals, and strong mechanistic evidence. . . . In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[13]

18.     The Centers for Disease Control and Prevention ("CDC") states that the Department of Health and Human Services has determined that benzene causes cancer in humans.[14] The World Health Organization ("WHO") and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[15]

19.     The FDA currently recognizes the high danger of this compound and lists it as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity. . .  However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted" and benzene is restricted under such guidance to 2 ppm.[16]

20.     The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[17]

---

[13] *Id.* (emphasis in original).
[14] Citizen Petition at 1 (citing Centers for Disease Control and Prevention, Facts About Benzene (2018) (https://emergency.cdc.gov/agent/benzene/basics/facts.asp)).
[15] *Id.* (citing International Agency for Research on Cancer and World Health Organization, IARC Monographs on the Identification of Carcinogenic Hazards to Humans (https://monographs.iarc.who.int/list-of-classifications)).
[16] *Id.* (citing Food and Drug Administration, Q3C – Tables and List Guidance for Industry (2018) (https://www.fda.gov/media/133650/download)).
[17] *Id.* at 2 (citing 4 Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health (NIOSH), Benzene (October 30, 2019).

21.    The Environmental Protection Agency ("EPA") has estimated that lifetime exposure to benzene inhalation at 0.4 parts per billion ("ppb"), or 0.0004 ppm, will increase the risk of developing cancer in humans at the same 1 in 100,000 exposed persons rate as FDA uses to set regulatory limits on other trace impurities like N-nitrosamines.[18]

22.    As previously stated, the subject Products are considered cosmetics, which the FDCA defines by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance[.]" Federal Food, Drug, and Cosmetic Act § 201(i). "Cosmetic companies have a legal responsibility for the safety of their products and ingredients."[19]

23.    The Products are not drugs and contain no active pharmaceutical ingredient for therapeutic purposes. Thus, *any* amount of benzene is unacceptable and should not be employed in the manufacture of the Products.

24.    Defendant's failure to control for benzene contamination and minimized notification of the importance and risks of benzene in its adulterated Products constitutes unfair and deceptive conduct.

25.    Plaintiff and the Class were injured by the full purchase price of the Products

---

(https://www.cdc.gov/niosh/npg/npgd0049.html); Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health, BENZENE: Systemic Agent (2011) (https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750032.html)).

[18] *Id.* (citing Environmental Protection Agency. Benzene; CASRN 71-43-2. (https://iris.epa.gov/static/pdfs/0276_summary.pdf); Food and Drug Administration (February 2021). Control of Nitrosamine Impurities in Human Drugs. (https://www.fda.gov/media/141720/download).

[19] Cosmetic Safety Q&A: Personal Care Products (https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-care-products#:~:text=Cosmetic%20companies%20have%20a%20legal,product%20affects%20how%20you%20look).

because the Products are worthless, as they are adulterated and contain the known human carcinogen, benzene, and Defendant failed to warn consumers of this fact. Such illegally sold products are worthless and have no value.

26.     Plaintiff and Class members bargained for a dry shampoo free of contaminants and dangerous substances and were deprived the basis of their bargain when Defendant sold them a product containing the carcinogen benzene, which rendered the Products unmerchantable and unfit for use.

27.     As the Products expose consumers to benzene, sometimes well above the legal limit for drugs (which the Products are not), the Products are not fit for use by humans. Plaintiff is further entitled to damages for the injury sustained in being exposed to high levels of acutely toxic benzene, damages related to Defendants' conduct, and injunctive relief.

28.     The manufacture of any misbranded or adulterated cosmetic is prohibited under federal law[20] and Florida state law.[21]

29.     The introduction into commerce of any misbranded or adulterated cosmetic is similarly prohibited.[22]

30.     The receipt in interstate commerce of any adulterated or misbranded cosmetic is also unlawful.[23]

---

[20] 21 U.S.C § 331(g).
[21] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of The following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").
[22] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).
[23] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of such drug, device, or cosmetic, for pay or otherwise.").

31.     Among the ways a cosmetic may be adulterated are:

If it consists in whole or in part of any filthy, putrid, or decomposed substance; or
. . . whereby it may have been rendered injurious to health;[24]

32.     A cosmetic is misbranded "[i]f its labeling is false or misleading in any particular."[25]

33.     Defendant did not disclose that benzene, a known human carcinogen, is present in the Products purchased by Plaintiff and the putative class members. As a result of benzene contamination in the Products, they are considered adulterated and misbranded. The FDA instructs that there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[26]

34.     Defendant wrongfully advertised and sold the Products without any labeling to indicate to consumers that these products contain benzene. The following image is illustrative of the labels contained on the Products purchased by Plaintiff and the class members, and Plaintiff notes that the labeling on the back of the bottle contains "Warnings" none of which are for the presence of a carcinogenic ingredient:

---

[24] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid, or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health.").

[25] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.")

[26] FDA, Q3C–2017 Tables and List Guidance for Industry (dated June 2017, available at: https://www.fda.gov/media/71737/download, last viewed on December 13, 2021).





**Wave hello to beachy hair.**
*Babes everywhere are looking
for that carefree, just-back-from-
the-beach texture. Beach Babe dry
shampoo quickly absorbs oil while
adding a tousled texture in a
vacation-worthy Toasted Coconut
fragrance. Whether you're on
holiday or stuck in the middle of
winter, Beach Babe adds style that
even a mermaid would envy!*

( instant refresh | no water )

**Directions:** Shake vigorously.
Hold can 8-10 inches away
and spray onto roots. Massage
thoroughly with fingertips and
brush through. Style as usual.

**INGREDIENTS:** ISOBUTANE, PROPANE,
ALCOHOL DENAT., ALUMINUM STARCH
OCTENYLSUCCINATE,
ISOPROPYL MYRISTATE, SILICA,
FRAGRANCE (PARFUM).

**WARNING: FLAMMABLE.** Avoid spraying in eyes.
Contents under pressure. Do not puncture or
incinerate. Avoid fire, flame and smoking during use
and until hair is thoroughly dry. Do not store at
temperatures above 120°F. Use only as directed.
Avoid spraying in close contact with unprotected skin.
Intentional misuse by deliberately concentrating
and inhaling the contents can be harmful or fatal.
**KEEP OUT OF REACH OF CHILDREN.**

**nymbrands.com**
Dist. by DeMert Brands, Inc.
Lutz, FL 33549.
1-813-903-0434

©2018. The graphic hair design is a
registered trademark of DeMert Brands, Inc.

MADE IN
**USA**

CRUELTY
FREE

35.     Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Products purchased by the Plaintiff and the other Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Products (i) are marketed in substantially the same way—as dry shampoo— and (ii) fail to include labeling indicating to consumers that the Products contain the known human carcinogen, benzene, at levels that are dangerous to human health when used as directed. Accordingly, the misleading effect of all of the Products' labels are substantially the same.

36.     Had Plaintiff and members of the putative class known that any of the Products were contaminated with benzene, a known human carcinogen, they would not have purchased any of Defendant's Products. Thus, Plaintiff and members of the putative class have "lost money" by purchasing products they would not have otherwise purchased but for Defendant's misrepresentations and omissions. The decision to purchase or not purchase products that contain benzene at any level is a financial and healthcare decision that affects the Plaintiff and members of the putative class in a personal and individual way, thus conferring a particularized injury. By failing to disclose the presence of benzene in its Products, Plaintiff and members of the putative class have been denied the opportunity to make those informed decisions. As a result, Plaintiff and members of the putative class have Article III standing.

**CLASS ALLEGATIONS**

37.     Plaintiff brings this action as a class action pursuant to Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated as members of the following class against Defendant for violations of Florida state laws and/or similar laws in other states

> All persons or entities in the United States (including its Territories and the District of Columbia) who purchased any Products for

personal use or consumption (the "Nationwide Class"); and in the alternative,

All persons or entities located in the state of Florida that purchased any Products for personal use or consumption (the "Florida Sub-Class") (collectively, the "Classes").

38.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Classes are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

39.     Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

40.     ***Numerosity.*** Rule 23(a)(1) of the Federal Rules of Civil Procedure:  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain many tens or hundreds of thousands of members.   The precise number of Class members is unknown to Plaintiff at this time.

41.     ***Commonality and Predominance.*** Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.     Whether Defendant misrepresented and/or failed to disclose material facts

concerning the Products;

      b.    Whether Defendant's conduct was unfair and/or deceptive;

      c.    Whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

      d.    Whether Defendant breached an express warranty;

      e.    Whether Defendant breached an implied warranty;

      f.    Whether Plaintiff and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages; and

      g.    Whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain benzene, a known human carcinogen.

42.    ***Typicality.***  Rule 23(a)(3) of the Federal Rules of Civil Procedure:  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Product in Defendant's collection. Plaintiff is advancing the same claims and legal theories on behalf of herself and all putative Class members.

43.    ***Adequacy***.  Rule 23(a)(4) of the Federal Rules of Civil Procedure:  Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class' interests will be fairly and adequately protected by Plaintiff and her

counsel.

44.     ***Declaratory Relief.***   Rule 23(b)(2) of the Federal Rules of Civil Procedure: Defendant has acted or refused to act on grounds generally applicable to Plaintiff and Class members, thereby making appropriate declaratory relief, with respect to the Classes as a whole.

45.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Products that are adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Products to Plaintiff and Class members.

46.     Unless a class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

47.     ***Superiority***.  Rule 23(b)(3) of the Federal Rules of Civil Procedure:  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of the Florida Deceptive and Unfair Trade Practices Act
**(FLA. STAT. §501.201, *et seq.*)**
**On Behalf of the Florida Sub-Class**

48.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of the Florida Sub-Class pursuant to section 501.211, Florida Statutes.

50.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat.

51.     Plaintiff and the Florida Class members are "consumers" within the meaning of section 501.203(7), Florida Statutes.

52.     Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce the Products, which constitutes trade and commerce as defined by section 501.203(8), Florida Statutes, and is therefore subject to FDUPTA.

53.     As alleged herein, Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct because she purchased Products from Defendant in reliance on Defendant's representation that the ingredients in its Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

54.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff and the Class to damages and relief under sections 501.201-213, Florida Statutes.

55.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in its labels that its Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the certain Products are adulterated with benzene, a known human carcinogen.

56.     By committing the acts alleged above, Defendant has engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.

57.     Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Products without knowledge that the Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for Aerosol Spray Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiff and the putative Class have been "aggrieved" (i.e., lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

58.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulted from ordinary use of the Products, consumers could not have reasonably avoided such injury.

59.     Further, Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff is a long-time user of Defendant's Products, and she desires

to purchase Defendant's Products in the future if she can be assured that the Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise, promote, and sell adulterated Products that deceive the public as to their ingredients, contents and/or safety. Plaintiff is thus likely to again be wronged in a similar way. For example, if Plaintiff or the Class members encounter Defendant's Products in the future and there is a risk those products still contain benzene, Plaintiff or Class members may mistakenly rely on the product's label to believe that Defendant's eliminated benzene when they did not.

60.     Plaintiff and putative Class members are entitled to recover their reasonable attorney's fees pursuant to section 501.2105, Florida Statutes.

61.     Further, Plaintiff and the Florida Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

62.     On behalf of Plaintiff and the Florida Class, Plaintiff also seeks an order entitling her the Class to recover all monies spent on the Defendant's Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.

63.     In addition, the measure of restitution should be full refund of the purchase price insofar as the Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff and Class members would have paid nothing for Products containing benzene. Indeed, there is no discernible "market" for an over-the-counter dry shampoo product that is adulterated with a known human carcinogen. As recognized by the WHO,

"[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[27] As a result, Defendant's Products are rendered valueless.

64.     Wherefore, Plaintiff and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendant's Products.

**COUNT II**

**<u>Breach of Express Warranty</u>**
**(On Behalf of the Nationwide Class and Florida Sub-Class)**

65.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

66.     Plaintiff brings this claim on behalf of herself and the Nationwide Class and the Florida Sub-Class.

67.     Plaintiff and each Class member purchased Defendant's Products from common retail settings. There was no learned intermediary between the manufacturer and the end-purchaser at the time of purchase and the express warranties were on the Product packaging, labeling, and via direct-to-consumer advertising.

68.     Plaintiff and each Class member formed a contract with Defendant at the time Plaintiff and the other Class members purchased Defendant's Products. The terms of the contract include the promises and affirmations and omissions of fact made by Defendant on its Product packaging, labeling, and through marketing and advertising. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiff and each Class member.

---

[27] *See* https://www.who.int/publications/i/item/WHO-CED-PHE-EPE-19.4.2 (last visited Nov. 2, 2022).

69.     Defendant expressly warranted that its Products were fit for their ordinary use (i.e., as a safe product suitable for human application) to "be used on dry hair without using soap or water."[28] It also expressly warranted that its Products were not adulterated or misbranded, stating that "[w]e source clean, quality ingredients" and "[y]ou can count on us to . . . keep the ingredients clean, and the bar high."[29]

70.     Plaintiff and each Class member read and relied on one or more of the express warranties provided by Defendant in the labeling, packaging, and written advertisements in deciding to purchase the Products.

71.     Defendant's Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance applicable standards, were not suitable for human application, and were adulterated and misbranded.

72.     At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1- 2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2- 313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382- A:2-313; N.J. Stat.

---

[28] *See* https://notyourmothers.com/blogs/news/everything-you-need-to-know-about-dry-shampoo (last visited Nov. 3, 2022).
[29] *See* https://notyourmothers.com/pages/about (last visited Nov. 3, 2022).

Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A2-313; Va. Code § 8.2- 313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

73. At the time that Defendant marketed and sold its Products, it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application and not adulterated or misbranded. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member.

74. Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Products manufactured and sold by Defendant.

75. Defendant breached its express warranties with respect to its Products because the products were not suitable for human application because they were adulterated with benzene and misbranded.

76. Plaintiff and each Class member would not have purchased the Products had they known the products contained benzene, were not suitable for human application, did not comply with applicable standards, and/or were adulterated and misbranded.

77. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Products, and any consequential damages resulting from the purchases, in

that the Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## COUNT III

### Breach of the Implied Warranty
**(On Behalf of the Nationwide Class and Florida Sub-Class)**

78.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

79.     Plaintiff brings this claim on behalf of herself and the Nationwide Class and the Florida Sub-Class.

80.     Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

81.     Because the Products contain benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Products are used.

82.     Plaintiff and members of the Class purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

83.     The Products were not altered by Plaintiff or members of the Class.

84.     Plaintiff and members of the Class were foreseeable users of the Products.

85.     Plaintiff and members of the Class used the Products in the manner intended.

86.     As alleged, the Products were not adequately labeled and did not disclose that they contain benzene.

87.     The Products did not measure up to the promises stated in the written literature, media advertisement and communications by and from Defendant.

88.     Defendant impliedly warranted that the Products were merchantable, fit, and safe for ordinary use. Indeed, Defendant impliedly represented that the Products were free of harmful ingredients, stating that they are "[m]ade with good vibes only" and are "[s]ulfate surfactant free, silicone free, paraben free, [and] phthalate free." [30]

89.     Defendant further impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold. At the time Defendant marketed and otherwise placed its Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Products—to have a safe and effective dry shampoo—which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Products, but instead would rely on Defendant's representations that the Products were suitable for their particular purpose and free of dangerous carcinogens (i.e., benzene).

90.     Contrary to these implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

91.     Further, as the intended consumers and ultimate users of the Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiff obtained Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe, and not hazardous to one's health.

---

[30] *See*, e.g., https://notyourmothers.com/products/clean-freak-unscented-dry-shampoo?_pos= 10 &_sid=31f32667b&_ss=r (last visited Nov. 3, 2022).

Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Products in the manner intended.

92.     In breach of the implied warranty of merchantability, the Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, *inter alia*, they contain a dangerous carcinogen with the potential of causing serious injury and/or death. Defendant's Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Products unfit for their ordinary purposes. As such, they are not merchantable.

93.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

## COUNT IV

### Unjust Enrichment
**(On Behalf of the Nationwide Class and the Florida Sub-Class)**

94.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

95.     Plaintiff brings this claim on behalf of herself and the Nationwide Class and the Florida Sub-Class.

96.     Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products.

97.     Defendant voluntarily accepted and retained this benefit.

98.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

99.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Class, because Plaintiff, and members of the Class, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

100.    Defendant was unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Class, because they would have not purchased the Products had they known the true facts.

101.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

102.    Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.      For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Plaintiff and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), of all issues so triable.

Dated: November 3, 2022.                    Respectfully submitted,

*/s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (FBN 44401)
Jeff Ostrow (FBN 121452)
Jonathan M. Streisfeld (FBN 117447)
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
cardoso@kolawyers.com
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Attorneys for Plaintiff and the Putative Classes*