# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 0:22-CV-62054

| | |
|---|---|
| JANINE ZAMORA, MINDY COLLETTE, JESSICA SCHOENROCK, EMILY EVANS, STEPHANIE COHEN SHALIT, CONDALISA LEGRAND, JILL KERNS, and ALEXIS MORGAN, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>DEMERT BRANDS, LLC,<br><br>      Defendant. | <u>CLASS ACTION</u><br><br>**JURY TRIAL DEMANDED** |

## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Janine Zamora, Mindy Collette, Jessica Schoenrock, Emily Evans, Stephanie Cohen Shalit, Condalisa LeGrand, Jill Kerns, and Alexis Morgan ("Plaintiffs"), by their undersigned counsel, individually and on behalf of all others similarly situated, bring this Consolidated Amended Class Action Complaint against Defendant DeMert Brands, LLC ("Defendant") and allege as follows, pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.     Plaintiffs are customers who purchased for normal household use Defendant's dry

shampoo products that contain dangerously high levels of benzene, a known carcinogenic impurity that has been linked to leukemia and other cancers.

2. Defendant distributes, markets, and sells to consumers across the United States, both in retail establishments and online, certain dry shampoo products under the name "Not Your Mother's" (the "Products").

3. The Products are not designed to contain benzene, and in fact, ***no*** amount of benzene is acceptable in dry shampoo products like the Products. Thus, the presence of benzene in the Products renders them adulterated and misbranded, and therefore illegal to sell under both federal and state law. As a result, the Products are unsafe and illegal to sell under federal law and therefore worthless. *See* 21 U.S.C. §§ 331(a), 352.

4. Further, although Defendant lists the Products' ingredients on their labels, benzene is not among those ingredients listed. Thus, Defendant misrepresents that the Products do not contain benzene, or otherwise fails to disclose that the Products contain benzene. Plaintiffs and other Class members would not have purchased the Products, or would have paid substantially less for the Products, had Defendant disclosed that the Products contained or risked containing benzene, or otherwise not misrepresented that the Products did not contain or were not at risk of containing benzene.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

6. The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business activities in the state of Florida.

Defendant has marketed, promoted, distributed, and sold the Products in Florida, and Defendant has sufficient minimum contacts with this state and/or sufficiently availed itself of the markets in this state through promotion, sales, distribution, and marketing to render the exercise of jurisdiction by this Court permissible.

7. Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is, therefore "a citizen of the State where it has its principal place of business [Florida] and the State under whose laws it is organized [Florida]." *See* 28 U.S.C. § 1332(d)(10).

8. Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Defendant has marketed, advertised, and sold the Products in this District, and Defendant has caused harm to members of the Classes who reside in this District.

## PARTIES

9. Plaintiff Janine Zamora is and was at all relevant times a citizen and resident of Pompano Beach, Florida. Plaintiff Zamora purchased for household use several Not Your Mother's dry shampoo products, including Not Your Mother's Clean Freak Refreshing Dry Shampoo – Original, approximately every 6 months since 2017, from either Publix Super Markets in Fort Lauderdale, Florida or Target in Fort Lauderdale, Florida. For example, on or around February 5, 2021, Plaintiff Zamora purchased one of Defendant's Products. When purchasing the Product, Plaintiff Zamora reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Zamora relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant

if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Zamora purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Zamora was injured in two ways by Defendant. *First*, Plaintiff Zamora purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Zamora was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

10.     Plaintiff Mindy Collette is and was at all relevant times a citizen and resident of the Bronx, New York. Plaintiff Collette purchased for household use Not Your Mother's Beach Babe Texturizing Dry Shampoo, in or around June 2021, from an Ulta Beauty Salon in the Bronx, New York. When purchasing the Product, Plaintiff Collette reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Collette relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Collette purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Collette was injured in two ways by Defendant. *First*, Plaintiff Collette purchased adulterated and misbranded Products that were

illegally sold to her, and therefore worthless. *Second*, Plaintiff Collette was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

11.     Plaintiff Jessica Schoenrock is and was at all relevant times a citizen and resident of Queens County, New York. Plaintiff Schoenrock purchased for household use several Not Your Mother's dry shampoo products within the Class Period from a Target store in Flushing, New York. When purchasing the Product, Plaintiff Schoenrock reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Schoenrock relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Schoenrock purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Schoenrock was injured in two ways by Defendant. *First*, Plaintiff Schoenrock purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Schoenrock was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

12.     Plaintiff Emily Evans is and was at all relevant times a citizen and resident of Chicago, Illinois. Plaintiff Evans purchased for household use Not Your Mother's Clean Freak Refreshing Dry Shampoo – Original within the Class Period from a CVS store in Chicago, Illinois. When purchasing the Product, Plaintiff Evans reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly

manufactured, free from defects, and safe for its intended use. Plaintiff Evans relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Evans purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Evans was injured in two ways by Defendant. *First*, Plaintiff Evans purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Evans was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

13.     Plaintiff Stephanie Cohen Shalit is and was at all relevant times a citizen and resident of Chicago, Illinois. Plaintiff Cohen Shalit purchased for household use several Not Your Mother's dry shampoo products within the Class Period. For example, in or about June 2022, Ms. Cohen Shalit purchased Not Your Mother's Clean Freak Dry Shampoo at a Walgreens store in Chicago, Illinois. When purchasing the Product, Plaintiff Cohen Shalit reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Cohen Shalit relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Cohen Shalit purchased were

contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Cohen Shalit was injured in two ways by Defendant. *First*, Plaintiff Cohen Shalit purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Cohen Shalit was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

14.     Plaintiff Condalisa LeGrand is and was at all relevant times a citizen and resident of Suisun, California. Plaintiff LeGrand has purchased for household use several Not Your Mother's dry shampoo products, including Not Your Mother's Clean Freak Dry Shampoo – Original and Plump for Joy Body Building, 7 oz. during the Class Period. Some of the purchases were at a Walmart store located at 1400 Hilltop Mall Road, Richmond, California 94806. When purchasing the Product, Plaintiff LeGrand reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff LeGrand relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff LeGrand purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff LeGrand was injured in two ways by Defendant. *First*, Plaintiff LeGrand purchased adulterated and misbranded Products that were illegally sold to

her, and therefore worthless. *Second*, Plaintiff LeGrand was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

15.     Plaintiff Jill Kerns is and was at all relevant times a citizen and resident of Yellowstone County, Montana. Plaintiff purchased for household use several Not Your Mother's dry shampoo products within the Class Period. For example, in or about October or November 2022, Plaintiff Kerns purchased Not Your Mother's Clean Freak Dry Shampoo at a Target store in Billings, Montana. When purchasing the Product, Plaintiff Kerns reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Kerns relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Kerns purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Kerns was injured in two ways by Defendant. *First*, Plaintiff Kerns purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Kerns was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

16.     Plaintiff Alexis Morgan is and was at all relevant times a citizen and resident of Lynchburg, South Carolina. Ms. Morgan purchased for household use several Not Your Mother's dry shampoo products within the Class Period, including Not Your Mother's Clean Freak Refreshing Dry Shampoo, from a store near her residence in Lynchburg, South Carolina. When

purchasing the Product, Plaintiff Morgan reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Product was properly manufactured, free from defects, and safe for its intended use. Plaintiff Morgan relied on these representations and warranties when deciding to purchase the Product, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products from Defendant if she had known that they were not, in fact, properly manufactured, free from defects, safe for their intended use, not adulterated and misbranded, and legal to sell. The Products Plaintiff Morgan purchased were contaminated with benzene, therefore rendering the Products improperly manufactured, defective, not safe for their intended use, adulterated and misbranded, and illegal to sell. Thus, Plaintiff Morgan was injured in two ways by Defendant. *First*, Plaintiff Morgan purchased adulterated and misbranded Products that were illegally sold to her, and therefore worthless. *Second*, Plaintiff Morgan was deceived by Defendant's representations and omissions regarding the presence of benzene in the Products.

17.     Defendant DeMert Brands, LLC is a Florida limited liability company with its headquarters and principal place of business located at 15401 N. Nebraska Ave. #102, Lutz, Florida. Defendant is a beauty products company that "creates and maintains over 125 products within 12 product lines."[1] Defendant launched the "Not Your Mother's" brand in 2008, and it "can now be found in over 25,000 stores nationwide . . . with 31 items and more continually in the works."[2]

## **FACTUAL ALLEGATIONS**

18.     Defendant manufactures, markets, advertises, labels, distributes, and sells Not Your

---

[1] https://www.demertbrands.com/about/ (last visited Feb. 21, 2023).

[2] *Id.*

Mother's dry shampoo, including the Products.[3]

19.     Dry shampoo products are considered cosmetics that are regulated by the U.S. Food and Drug Administration ("FDA").[4]

20.     On October 31, 2022, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address dangerous levels of benzene in dry shampoos based upon rigorous testing the organization had conducted on a number of dry shampoo products.[5]

21.     Valisure found that certain dry shampoo products, including the Products, contain benzene, with values up to 158 parts per million ("ppm").[6] Additional testing was performed by Syft Technologies on certain lots of Defendant's Products which confirmed the presence of benzene.[7]

22.     In its Citizen Petition, Valisure shows data from the analysis of benzene by directly sampling contaminated air after spraying dry shampoo products, which suggests the potential for short- and long-term inhalation exposure to high levels of benzene.[8] The presence of this known human carcinogen in dry shampoo products that are regularly used indoors and in large volumes makes this finding especially troubling.[9]

---

[3] *Id.*; *see also* https://www.demertbrands.com/not-your-mothers-haircare/ (last visited Feb. 21, 2023).

[4] Valisure Citizen Petition on Benzene in Dry Shampoo Products ("Valisure Petition") at 1 (available at https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf, last accessed Feb. 21, 2023).

[5] *See id.*

[6] *Id.* at 2, 13-17.

[7] *Id.* at 9, 19.

[8] *Id.*

[9] *Id.*

23.     Benzene is a component of crude oil, gasoline, and cigarette smoke, and is one of the elementary petrochemicals. The U.S. Department of Health and Human Services has determined that benzene causes cancer in humans. Likewise, the FDA lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." Benzene is associated with blood cancers such as leukemia.[10]

24.     A study from 1939 on benzene stated that "exposure over a long period of time to any concentration of benzene greater than zero is not safe,"[11] which is a comment reiterated in a 2010 review of benzene research explicitly stating: "There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion."[12]

25.     The World Health Organization ("WHO") has stated, "[h]uman exposure to benzene has been associated with a range of acute and long-term adverse health effects and diseases, including cancer and haematological effects."[13]

26.     According to the American Cancer Society:

IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes acute myeloid leukemia (AML). IARC also notes that benzene exposure has been linked

---

[10] National Cancer Institute, Cancer-Causing Substances: Benzene, https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene (last visited Feb. 21, 2023).

[11] F.T. Hunter, *Chronic Exposure to Benzene (Benzol). II. The Clinical Effects*, 21 J. INDUSTRIAL HYGIENE & TOXICOLOGY 331 (1939), https://www.cabdirect.org/cabdirect/abstract/19402700388.

[12] Martyn T. Smith, Advances in Understanding Benzene Health Effects and Susceptibility, 31 ANN. REV. PUB. HEALTH 133 (2010), https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646.

[13] https://www.who.int/teams/environment-climate-change-and-health/chemical-safety-and-health/health-impacts/chemicals/benzene (last visited Feb. 21, 2023).

with acute lymphocytic leukemia (ALL), chronic lymphocytic leukemia (CLL), multiple myeloma, and non-Hodgkin lymphoma.[14]

27.    The Centers for Disease Control and Prevention ("CDC") warns that "[b]enzene works by causing cells not to work correctly. For example, it can cause bone marrow to not produce enough red blood cells, leading to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells." The CDC also cautions that "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[15]

28.    According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, skin absorption, ingestion, skin and/or eye contact."[16]

29.    Due to the substantial harm to humans caused by exposure to chemicals such as benzene, companies have been founded with the specific goal of preventing defective products containing said harmful chemicals from reaching consumers. Valisure is a company with a mission "to help ensure the safety, quality and consistency of medications and supplements in the market."[17] In order to do this, Valisure operates an independent analytical laboratory registered with the FDA and accredited by the International Organization for Standardization.

30.    Valisure has tested for specific chemical qualities in numerous types of products, such as N-Nitrosodimethylamine ("NDMA") in metformin, benzene in hand sanitizers, benzene in sun care products, and benzene in antiperspirants. Each time, Valisure's detection of benzene

---

[14] American Cancer Society, Benzene and Cancer Risk (January 5, 2016), https://www.cancer.org/cancer/cancer-causes/benzene.html.

[15] Centers for Disease Control and Prevention, Facts About Benzene, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

[16] National Institute for Occupational Safety and Health ("NIOSH"), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html.

[17] Valisure Petition at 3.

and other carcinogens has been independently confirmed by industry leaders and led to recalls by manufacturers over the subject products.

31.     On October 31, 2022, Valisure tested for benzene in various types of dry shampoos by utilizing gas chromatography and detection by mass spectrometry ("GC-MS") instrumentation that allows mass spectral separation. GC-MS "is generally considered one of the most accurate analyses available."[18] Indeed, the FDA used the same method to test for impurities, including benzene, in hand sanitizers.[19]

32.     After conducting this testing, Valisure "detected high levels of benzene in specific batches of certain dry shampoo products."[20]

33.     Valisure tested the Not Your Mother's Products manufactured and sold by Defendant, which were found to contain as much as 158 ppm of benzene, the highest levels of benzene in any of the products Valisure tested:

| Not Your Mother's Product | First Spray Benzene (ppm) | Second Spray Benzene (ppm) | Third Spray Benzene (ppm) | Fourth Spray Benzene (ppm) |
|---|---|---|---|---|
| Beach Babe Texturizing Dry Shampoo – Toasted Coconut – 7 0z | 158 | 122 | 45.0 | 20.5 |
| Clean Freak Refreshing Dry Shampoo – Original – 7 oz | 143 | 88.8 | 107 | 92.8 |
| Clean Freak Refreshing Dry Shampoo – Unscented – 7 oz | 69.6 | 34.1 | 11.5 | 19.9 |
| Triple Threat Brunette Dry Shampoo – Hint of Brunette Tinted Powder – 7 oz | 27.6 | 5.04 | 0.57 | 0.11 |
| Plump for Joy Body Building Dry Shampoo – Orange Mango – 7 oz | 132 | -- | -- | -- |
| Blonde Moment Dry Shampoo – Hint of Blond Tinted Powder – 7 oz | 22.9 | -- | -- | -- |

[18] https://www.element.com/materials-testing-services/chemical-analysis-labs/gcms-analysislaboratories.

[19] https://www.fda.gov/media/141501/download.

[20] Valisure Petition at 1.

| Clean Freak Refreshing Dry Shampoo – Original – 1.6 oz | 4.46 | -- | -- | -- |
|---|---|---|---|---|

34.     The FDA states that if benzene is "**unavoidable** in order to produce a drug product with a significant therapeutic advance," then the drug product may contain up to 2 ppm of benzene.[21] However, Defendant's Products contain levels of benzene significantly above this amount. Regardless, the Products are not designed to contain benzene, as dry shampoo products have long been sold without benzene contamination. Moreover, according to Valisure, "the dry shampoos tested are not drugs and contain no active pharmaceutical ingredient for therapeutic purposes; therefore, **any** significant detection of benzene could be deemed unacceptable."[22]

35.     In addition, Valisure tested multiple other brands of dry shampoo products, several of which were found to be "below the lower limit of quantitation,"[23] demonstrating that the Products could have been manufactured without benzene. Accordingly, **any** level of benzene in Defendant's Products is unacceptable and renders the Products adulterated, misbranded, unsafe, and worthless.

36.     Defendant did not disclose the actual or potential presence of benzene in its dry shampoo products on the Products' labeling, advertising, marketing, or sale.

37.     As mentioned above, the subject Products are considered cosmetics, which the Federal Food, Drug, and Cosmetic Act ("FDCS") defines by their intended use as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance." 21 U.S.C. § 321(i). "Cosmetic companies have a legal responsibility for the safety

---

[21] *Id.* at 2 (emphasis added).

[22] *Id.* (emphasis added).

[23] *Id.* at 17.

of their products and ingredients."[24]

38.      The FDCA prohibits the distribution of cosmetics that are adulterated or misbranded. A cosmetic is considered adulterated "if it bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual." 21 U.S.C. § 361(a).

39.      A cosmetic is also adulterated "[i]f it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 361(c).

40.      A cosmetic is misbranded if "its labeling is false or misleading in any particular," and if its packaging does not bear "a label containing … an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count." 21 U.S.C. §§ 362(a)-(b)(2). Further, as cosmetics regulated by the FDA, the Products must "bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product." 21 C.F.R. § 740.1(a).

41.      Any cosmetic product that is adulterated or misbranded is illegal to sell. 21 U.S.C. § 331(a). Adulterated and misbranded products thus have no economic value and are legally worthless.

42.      Moreover, the manufacture of any misbranded or adulterated cosmetic is prohibited under federal law,[25] as well as specifically prohibited under the laws of many states, including

---

[24] Cosmetic Safety Q&A: Personal Care Products (https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-care-products#:~:text=Cosmetic%20companies%20have%20a%20legal,product%20affects%20how%20you%20look) (last accessed March 20, 2023).

[25] 21 U.S.C § 331(g).

Florida and Illinois.[26]

43.     The presence of benzene renders the Products adulterated *and* misbranded. As alleged above, benzene is a poisonous and deleterious substance linked to cancer and dangerous at any level. The Products were also manufactured in such an unsanitary way that they became contaminated with benzene. Thus, the Products are adulterated.

44.     The Products' labeling also failed to disclose the existence of benzene in the Products, and the ingredients section of the Products' labeling does not list "benzene" as an ingredient. Further, the Products' labeling does not disclose the presence of benzene, even though a warning statement concerning benzene is necessary or appropriate to prevent a health hazard. 21 C.F.R. § 740.1(a). Therefore, the Products are also "misbranded."

45.     As a manufacturer, distributor, and seller of cosmetics products, Defendant has a duty to ensure its Products do not contain excessive (or any) levels of benzene, including through regular testing. But based on Valisure's testing results set forth above, Defendant made no reasonable effort to test its Products for benzene or other impurities. Nor did it disclose to Plaintiffs or any other consumers in any product advertising, labeling, packaging, or marketing that its dry shampoo Products contained benzene, in some instances many multiples beyond the interim emergency limit set by the FDA. To the contrary, Defendant represented and warranted, expressly and impliedly, that the Products were safe and effective for their intended use, were of

---

[26] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of The following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use."); *see also* 410 ILCS 620/14 (expressly adopting the federal labeling requirements under the Illinois Food, Drug and Cosmetic Act ("IL FDCA").

merchantable quality, complied with federal and state law, and did not contain carcinogens, reproductive toxins, or other impurities such as benzene.

46.     If Defendant had fulfilled its quality assurance obligations, Defendant would have identified the presence of the benzene contaminant almost immediately.

47.     Further, had Defendant adequately tested its Products for benzene and other carcinogens, reproductive toxins, and impurities, it would have discovered the Products contained benzene at levels above the FDA's limit (to the extent even applicable), making those products ineligible for distribution, marketing, and sale.

48.     Accordingly, Defendant knowingly, or at least negligently, introduced contaminated, adulterated, and/or misbranded Products containing dangerous amounts of benzene into the U.S. market.

49.     Defendant also knew or should have known about the carcinogenic potential of benzene because benzene is classified as a Group 1 compound by the WHO and the International Agency for Research on Cancer, meaning that it is "carcinogenic to humans." In addition, in the last year, numerous manufacturers have issued recalls of their products due to the presence of benzene. Defendant should therefore have been on high alert to test its Products for the presence of benzene.

50.     When Plaintiffs purchased Defendant's Products, Plaintiffs did not know, and had no reason to know, that Defendant's Products were adulterated and misbranded and thus unlawful to sell as set forth herein. Not only would Plaintiffs not have purchased Defendant's Products at all had they known the Products contained or risked containing benzene, they would not have been capable of purchasing them if Defendant had done as the law required and tested the Products for

benzene and other carcinogens, reproductive toxins, and impurities, because the Products would have been deemed adulterated and misbranded, and therefore illegal to sell.

51.     Moreover, no reasonable consumer would have paid any amount for products containing benzene, a known carcinogen and reproductive toxin, much less above the limits set by the FDA (even assuming those allowances apply to Defendant's Products).

52.     Thus, if Plaintiffs and Class members had been informed that Defendant's Products contained or may contain benzene, they would not have purchased or used the Products at all, or would have paid significantly less for them, making such omitted facts material to them.

53.     Plaintiffs and the Classes were injured by the full purchase price of the Products because they are worthless, as they are adulterated and misbranded due to the presence of harmful levels of benzene. Such illegally sold products are worthless and have no value.

54.     Further, Plaintiffs and Class Members bargained for a dry shampoo product free of contaminants and dangerous substances and were deprived of the basis of their bargain when Defendant manufactured and sold them products containing or at risk of containing the dangerous substance benzene. Had Defendant not misrepresented that the Products did not contain or were not at risk of containing benzene, and/or had Defendant not failed to disclose that the Products contained or were at risk of containing benzene, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much for the Products based on these misrepresentations or omissions.

55.     Defendant wrongfully advertised and sold the Products without any labeling to indicate to consumers that these products contain benzene. The following images are illustrative of the labels contained on the Products purchased by Plaintiffs and the Class members, and Plaintiff notes that the labeling on the back of the bottle contains "Warnings" none of which are for the

presence of a carcinogenic ingredient:



---

[27] *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Original-7-oz/16777427 (last visited Feb. 21, 2023).



28

---

28 *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Unscented-7-oz/52619225 (last visited Feb. 21, 2023).





29

---




30

---

30 *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Triple-Threat-Brunette-Color-Protection-Oil-Control-Dry-Shampoo-7-oz/816981822 (last visited Feb. 21, 2023).





31

---

31 *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Plump-for-Joy-Refreshing-Dry-Shampoo-Spray-7-oz/136604427 (last visited Feb. 21, 2023).



56.     Plaintiffs and Class members are entitled to damages for the monies paid to purchase the Products, statutory and punitive damages, attorneys' fees and costs, and injunctive relief.

57.     Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; (ii) violation of New York General Business Law § 349 – Deceptive Acts or Practices; (iii) violation of New York General Business Law § 350 – False Advertising; (iv) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815

---

[32]     *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Blonde-Moment-Color-Protection-Dry-Shampoo-7-oz/984267162 (last visited Feb. 21, 2023).

ILCS 505/1 *et seq.*; (v) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (vi) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (vii) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (viii) violation of the Montana Unfair Trade Practices Act, Mont. Code §§ 30-14-101 *et seq.*; (ix) unjust enrichment; and (x) violation of state consumer fraud acts.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and all others similarly situated, as members of the following classes against Defendant for violations of Florida, New York, Illinois, California, Montana, and South Carolina state laws and/or similar laws in other U.S. states and territories:

> **Nationwide Class:** All persons or entities in the United States (including its Territories and the District of Columbia) who purchased the Products for personal or household use within any applicable limitations period.

> **Florida Sub-Class:** All persons or entities who purchased the Products for personal or household use in Florida within any applicable limitations period.

> **New York Sub-Class:** All persons or entities who purchased the Products for personal or household use in New York within any applicable limitations period.

> **Illinois Sub-Class:** All persons or entities who purchased the Products for personal or household use in Illinois within any applicable limitations period.

> **California Sub-Class:** All persons or entities who purchased the Products for personal or household use in California within any applicable limitations period.

> **Montana Sub-Class:** All persons or entities who purchased the Products for personal or household use in Montana within any applicable limitations period.

> **South Carolina Sub-Class**: All persons or entities who purchased the Products for personal or household use in South Carolina within any applicable limitations period.

> **Consumer Fraud Multi-State Subclass:** All persons or entities who purchased

the Products for personal or household use in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington[33] within any applicable limitations period.

(collectively, "the Classes").

59.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Classes are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

60.     Certification of Plaintiffs' claims for Class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

61.     ***Numerosity.***  Rule 23(a)(1) of the Federal Rules of Civil Procedure:  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Classes contain tens or hundreds of thousands of members. The precise number of Class members is unknown to Plaintiffs at this time.

---

[33] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

62.     ***Commonality and Predominance.***  Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.     Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

b.     Whether Defendant's conduct was unfair and/or deceptive;

c.     Whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

d.     Whether Plaintiffs and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

e.     Whether an injunction is necessary to prevent Defendant from continuing to market and sell adulterated and misbranded Products that contain benzene, a known human carcinogen.

63.     ***Typicality.***  Rule 23(a)(3) of the Federal Rules of Civil Procedure:  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Product in Defendant's collection. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

64.     ***Adequacy***.  Rule 23(a)(4) of the Federal Rules of Civil Procedure:  Plaintiffs are

adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Classes' interests.

65. **_Declaratory Relief._** Rule 23(b)(2) of the Federal Rules of Civil Procedure: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making appropriate declaratory relief with respect to the Classes as a whole.

66. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell misbranded Products that are adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Products to Plaintiffs and Class members.

67. Unless a class is certified, Defendant will retain monies received due to their conduct taken from Plaintiffs and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

68. **_Superiority_**. Rule 23(b)(3) of the Federal Rules of Civil Procedure: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual

litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(FLA. STAT. §§ 501.201 *et seq.*)**
**On Behalf of Plaintiff Zamora and the Florida Sub-Class**

69.      Plaintiff Zamora realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

70.      Plaintiff Zamora brings this claim individually and on behalf of the Florida Sub-Class pursuant to section 501.211, Florida Statutes.

71.      The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

72.      Plaintiff Zamora and the Florida Sub-Class members are "consumers" within the meaning of section 501.203(7), Florida Statutes.

73.      Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce the Products, which constitutes trade and commerce as defined by section 501.203(8), Florida Statutes, and is therefore subject to FDUPTA.

74.     As alleged herein, Plaintiff Zamora has suffered injury in fact and lost money as a result of Defendant's conduct because she purchased Products from Defendant in reliance on Defendant's representation that the ingredients in its Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

75.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff Zamora and the Class to damages and relief under sections 501.201-213, Florida Statutes.

76.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in its labels that its Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Products are adulterated with benzene, a known human carcinogen.

77.     By committing the acts alleged above, Defendant has engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA. Specifically, Defendant engaged in unfair practices by selling products contaminated with benzene, which are adulterated and illegal to sell.

78.     Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Products without knowledge that the Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiff Zamora and the Florida Sub-Class have been "aggrieved" (i.e., lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

79.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulting from ordinary use, consumers could not have reasonably avoided such injury.

80.    Further, Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff Zamora is a long-time user of Defendant's Products, and she desires to purchase Defendant's Products in the future if she can be assured that the Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise, promote, and sell adulterated Products that deceive the public regarding their ingredients, contents and/or safety. Plaintiff Zamora is thus likely to be again wronged in a similar way. For example, if Plaintiff Zamora or the Florida Sub-Class members encounter Defendant's Products in the future and there is a risk those products still contain benzene, Plaintiff Zamora or Florida Sub-Class members may mistakenly rely on the Product's label to believe that Defendant's eliminated benzene when they did not.

81.    Plaintiff Zamora and Florida Sub-Class members are entitled to recover their reasonable attorney's fees pursuant to section 501.2105, Florida Statutes.

82.    Moreover, Plaintiff Zamora and the Florida Sub-Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

83.    On behalf of Plaintiff Zamora and the Florida Sub-Class, Plaintiff Zamora also seeks an order entitling her and the Class to recover all monies spent on Defendant's Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.

84.     In addition, the measure of restitution should be a full refund of the purchase price, since the Products are worthless. But for Defendant's misrepresentations and omissions, Plaintiff and Class members would have paid nothing for Products containing benzene. Indeed, there is no discernible "market" for an over-the-counter dry shampoo product that is adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[34] As a result, Defendant's Products are rendered valueless.

### COUNT II

### Violation of New York General Business Law § 349 – Deceptive Acts or Practices
### On Behalf of Plaintiffs Collette and Schoenrock and the New York Sub-Class

85.     Plaintiffs Collette and Schoenrock reallege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

86.     Plaintiffs Collette and Schoenrock bring this claim individually and on behalf of the New York Sub-Class pursuant to New York General Business Law ("GBL") § 349.

87.     GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce. *Id.* § 349(a).

88.     In selling goods throughout the state of New York, Defendant conducts business and trade within the meaning of GBL § 349.

89.     Plaintiffs Collette and Schoenrock and members of the New York Sub-Class are consumers who purchased products from Defendant for their personal use.

90.     Defendant is engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products (i) would not contain dangerously high levels of benzene, and (ii) are generally recognized as safe for human use. Defendant also

---

[34] *See* https://www.who.int/publications/i/item/WHO-CED-PHE-EPE-19.4.2 (last visited Feb. 21, 2023).

materially omitted critical facts regarding the true nature of the Products, specifically that the Products contained dangerous levels of benzene, were adulterated, and were unsafe for use as dry shampoo. Had Plaintiffs Collette and Schoenrock and members of the New York Sub-Class been aware that the Products contained benzene, they would not have purchased them.

91.    The deceptive acts and practices were directed at consumers.

92.    The deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase them. No reasonable consumer would knowingly purchase a dry shampoo product that may contain high levels of a known carcinogen.

93.    Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Products without knowledge that the Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for the Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiffs Collette and Schoenrock and the New York Sub-Class have been "aggrieved" (i.e., lost money) as required for standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

94.     Because consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulted from ordinary use of the Products, consumers could not have reasonably avoided such injury.

95.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs Collette and Schoenrock and members of the New York Sub-Class have sustained from having paid for and used Defendant's Products.

96.     As a result of Defendant's violations, Plaintiffs Collette and Schoenrock and members of the New York Sub-Class have suffered damages because: (a) they paid a premium price in the amount of the full purchase price of the Products based on Defendant's deceptive conduct, and (b) the Products do not have the characteristics, uses, benefits, or qualities promised.

97.     Plaintiffs Collette and Schoenrock and New York Sub-Class members are entitled to recover their actual damages or fifty dollars, whichever is greater, as well as three times actual damages where Defendant's violations were willful and knowing.  GBL § 349(h).

98.     In addition, Plaintiffs Collette and Schoenrock and New York Sub-Class members are entitled to recover their reasonable attorney's fees pursuant to GBL § 349(h).

## COUNT III

### Violation of New York General Business Law § 350 – False Advertising
### On Behalf of Plaintiffs Collette and Schoenrock and the New York Sub-Class

99.     Plaintiffs Collette and Schoenrock reallege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

100.     Plaintiffs Collette and Schoenrock bring this claim individually and on behalf of the New York Sub-Class pursuant to GBL § 350.

101.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. *Id.* § 350.

102.     False advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."  *Id.* § 350-a(1).

103.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

104.    Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers.

105.    Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

106.    Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

107.    Defendant also materially omitted key facts regarding the true nature of the Products, specifically that the Products contained dangerous levels of benzene, were adulterated, and were unsafe for use as dry shampoo. Had Plaintiffs Collette and Schoenrock and members of the New York Sub-Class been aware that the Products contained benzene, they would not have purchased them.

108.    Because consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulted from ordinary use of the Products, consumers could not have reasonably avoided such injury.

109.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs Collette and Schoenrock and members of the New York Sub-Class have sustained from having paid for and used Defendant's Products.

110.    As a result of Defendant's violations, Plaintiffs Collette and Schoenrock and members of the New York Sub-Class have suffered damages because (a) they paid a premium price in the amount of the full purchase price of the Products based on Defendant's deceptive conduct, and (b) the Products do not have the characteristics, uses, benefits, or qualities promised.

111.    Plaintiffs Collette and Schoenrock and New York Sub-Class members are entitled to recover their actual damages or five hundred dollars, whichever is greater, as well as three times actual damages where Defendant's violations were willful and knowing.  GBL § 350-e(3).

112.    In addition, Plaintiffs Collette and Schoenrock and New York Sub-Class members are entitled to recover their reasonable attorney's fees pursuant to GBL § 350-e(3).

**COUNT IV**

**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS §§ 501/1 _et seq._)**
**On Behalf of Plaintiffs Evans and Cohen Shalit and the Illinois Sub-Class**

113.    Plaintiffs Evans and Cohen Shalit reallege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

114.    Plaintiffs Evans and Cohen Shalit bring this claim individually and on behalf of the Illinois Sub-Class pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS §§ 505/1 _et seq_.

115.    Plaintiffs Evans and Cohen Shalit and the other Illinois Sub-Class members, as natural persons, are persons within the meaning of the ICFA.  815 ILCS § 505/1(c).

116.    Defendant, as a limited liability company, is a person within the meaning of the ICFA. _Id_.

117.    At all times relevant hereto, Defendant, which was engaged in the "advertising, offering for sale or distribution" of tangible property, was engaged in trade or commerce as defined in the ICFA. _Id._ § 505/1(f).

118.    The IFCA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of [Illinois] or the United States." _Id._ § 505/10b(1).

119.     The Federal FDCA prohibits the introduction into interstate commerce of "any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

120.     As the Products are adulterated and misbranded, the FDCA specifically prohibits their introduction into interstate commerce, and thus, actions under the ICFA related to the Products being adulterated and misbranded are not barred by 815 ILCS § 505/10b(1).

121.     The IFCA prohibits engaging in any "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS § 505/2.

122.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. *Id*.

123.     Plaintiffs Evans and Cohen Shalit and the other Illinois Sub-Class members reasonably relied upon Defendant's representations that the Products were safe for personal use and, due to Defendant's affirmative misrepresentations of the ingredients in the Products, which excluded benzene, and omission of the presence of benzene in the Products, Plaintiffs read and relied on Defendant's labeling to conclude that the Products were not contaminated with any dangerous substance, including benzene.

124.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in its labels that its Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Products are adulterated with benzene, a known human carcinogen.

125.    By committing the acts alleged above—specifically, the sale of adulterated and illegally sold products—Defendant engaged in unfair conduct in violation of the ICFA.

126.    Defendant engaged in deceptive conduct, including but not limited to misrepresenting that the Products did not contain or did not risk containing benzene, and failing to disclose that the Products contained or risked containing benzene.

127.    Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS §§ 505/2 & 510/2(7).

128.    Defendant advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

129.    Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

130.    Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Products without knowledge that the Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for the Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiffs Evans and Cohen Shalit and the Illinois Sub-Class have been "aggrieved" (i.e., lost money) as required for standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

131.    Because consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulted from ordinary use of the Products, consumers could not have reasonably avoided such injury.

132.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs Evans and Cohen Shalit and members of the Illinois Sub-Class have sustained from having paid for and used Defendant's Products.

133.     As alleged herein, Plaintiffs Evans and Cohen Shalit have suffered injury-in-fact and lost money as a result of Defendant's conduct because they purchased Products from Defendant in reliance on Defendant's representation that the ingredients in its Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

134.     As a result of Defendant's violations, Plaintiffs Evans and Cohen Shalit and members of the Illinois Sub-Class have suffered damages because: (a) they paid a premium price in the amount of the full purchase price of the Products based on Defendant's deceptive conduct, and (b) the Products do not have the characteristics, uses, benefits, or qualities promised.

135.     Plaintiffs Evans and Cohen Shalit and Illinois Sub-Class members are entitled to recover their actual damages. 815 ILCS § 505/10a.

136.     Further, Plaintiffs Evans and Cohen Shalit and the Illinois Sub-Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary. *Id.* § 505/10a(c).

137.     On behalf of Plaintiffs Evans and Cohen Shalit and the Illinois Sub-Class, Plaintiffs Evans and Cohen Shalit also seek an order entitling them and the Class to recover all monies spent on the Defendant's Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.

138.     The measure of restitution should be a full refund of the purchase price insofar as the Products and their associated labels are worthless. But for Defendant's misrepresentations and

omissions, Plaintiffs Evans, Cohen Shalit, and Class members would have paid nothing for Products containing benzene. Indeed, there is no discernible "market" for an over-the-counter dry shampoo product that is adulterated with a known human carcinogen. As a result, Defendant's Products are rendered valueless.

139.    In addition, Plaintiffs Evans and Cohen Shalit and Illinois Sub-Class members are entitled to recover their reasonable attorney's fees. *Id.* § 505/10a(c).

**COUNT V**

**Violation of the California Unfair Competition Law**
**(CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)**
**On Behalf of Plaintiff LeGrand and the California Sub-Class**

140.    Plaintiff LeGrand realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

141.    Plaintiff LeGrand brings this claim individually and on behalf of the California Sub-Class pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

142.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

143.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

144.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.      The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

b.      The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

c.      The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

      d.     The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

145.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

146.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

147.   Further, the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

148.   A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

149.   As set forth herein, Defendant's claims relating the representations and omissions stated on the Products' labeling and marketing statements mislead reasonable consumers regarding the presence of benzene in the Products.

150.   Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised the Products to unsuspecting consumers.

151.   Plaintiff LeGrand and California Sub-Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Additionally, Plaintiff LeGrand has purchased

the Products, and would be willing to purchase these Products again, if the risk of benzene exposure was eliminated. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

152.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff LeGrand and the other California Sub-Class Members. Plaintiff LeGrand has suffered injury in fact as a result of Defendant's unlawful conduct, including economic injury.

153.     In accordance with Bus. & Prof. Code § 17203, Plaintiff LeGrand seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

154.     Plaintiff LeGrand and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition. Plaintiff LeGrand seeks such equitable relief, in the alternatively, should their legal remedies prove unavailable.

**COUNT VI**

**Violation of the California False Advertising Law**
**(CAL. BUS. & PROF. CODE §§ 17500 *et seq.*)**
**On Behalf of Plaintiff LeGrand and the California Sub-Class**

155.     Plaintiff LeGrand realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

156.     Plaintiff LeGrand brings this claim individually and on behalf of the California Sub-Class pursuant to the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*

157.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal

property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which [are] known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

158.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products were likely to mislead consumers acting reasonably, as to the content of the Products and the potential risk of exposure to benzene.

159.    Plaintiff LeGrand suffered injury-in-fact as a result of Defendant's actions as set forth herein because she purchased the Products in reliance on Defendant's false and misleading marketing claims stating or suggesting that the Products are free from benzene and are safe for their ordinary use.

160.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in an untrue and misleading manner, which Defendant knew or reasonably should have known, and omitted material information from the Products' labeling.

161.    Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers.

162.    As a result, Plaintiff LeGrand and the California Sub-Class, and the general public, are entitled to injunctive and equitable relief, restitution, and an order for disgorgement of the funds by which Defendant was unjustly enriched.

163.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff LeGrand, on behalf of herself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in

deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

164.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the Consumers Legal Remedies Act or commercial code, and restitution is not limited to returning to Plaintiff LeGrand and California Sub-Class members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the Consumers Legal Remedies Act and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

165.    In addition, because the procedures for obtaining relief under the FAL are more efficient than under the Consumers Legal Remedies Act or commercial code, Plaintiff LeGrand's legal remedies are inadequate.

## COUNT VII

### Violation of the California Consumers Legal Remedies Act
### (CAL. CIV. CODE §§ 1750 *et seq.*)
### On Behalf of Plaintiff LeGrand and the California Sub-Class

166.    Plaintiff LeGrand realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

167.    Plaintiff LeGrand brings this claim individually and on behalf of the California Sub-Class pursuant to the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

168.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

169.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff LeGrand and California Sub-Class members, and violated and continue to violate the following sections of the CLRA:

a.     Section 1770(a)(5): representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

b.     Section 1770(a)(7); representing that goods are of a particular standard, quality, or grade if they are of another;

c.     Section 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     Section 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

170.     Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

171.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

172.     Pursuant to California Civil Code § 1782, on November 22, 2022, more than 30 days before filing this consolidated complaint, Plaintiff LeGrand sent written notice of her claims and Defendant's particular violations of the CLRA to Defendant by certified mail, return receipt requested, but Defendant has failed to implement remedial measures.

173. As a result of Defendant's acts, Plaintiff LeGrand and the California Sub-Class have suffered harm, and therefore seek (a) actual damages resulting from purchases of the Products sold throughout the Class Period, (b) punitive damages, (c) injunctive relief in the form of modified advertising, (d) restitution, and (e) attorneys' fees and costs. *See* Cal. Civ. Code § 1782(d).

## COUNT VIII

### Violation of the Montana Unfair Trade Practices Act
### (MONT. CODE §§ 30-14-101 *et seq.*)
### On Behalf of Plaintiff Kerns and the Montana Sub-Class

174. Plaintiff Kerns realleges and incorporates by reference paragraphs 1 through 68 as though fully set forth herein.

175. Plaintiff Kerns brings this claim individually and on behalf of the Montana Sub-Class pursuant to the Montana Unfair Trade Practices Act ("MUTPA"), Mont. Code §§ 30-14-101 *et seq.*

176. The MUTPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code § 30-15-103.

177. Section 30-14-101 *et seq.*, Montana Statutes, prohibits unfair and/or deceptive trade practices in the conduct of any trade or commerce.

178. Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce the Products, which constitutes trade and commerce under section 30-14-102, and is therefore subject to MUTPA.

179. Section 30-14-101 *et seq.*, Montana Statutes, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

180. Defendant's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce

consumers to purchase them. No reasonable consumer would knowingly purchase a dry shampoo product that may contain high levels of a known carcinogen.

181.    Defendant's conduct is substantially injurious to consumers. Consumers are purchasing and using Defendant's Products without knowledge that the Products are contaminated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for Products contaminated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiff Kerns and the Montana Sub-Class have been "aggrieved" (i.e., lost money) as required for standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

182.     Because consumers reasonably rely on Defendant's labeling of the ingredients and other information disclosing what is contained in the Products and injury resulting from ordinary use of the Products, consumers could not have reasonably avoided such injury.

183.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Kerns and members of the Montana Sub-Class have sustained from having paid for and used Defendant's Products.

184.    As alleged herein, Plaintiff Kerns has suffered injury-in-fact and lost money as a result of Defendant's conduct because she purchased Products from Defendant in reliance on Defendant's representations that the ingredients in its Products were safe and effective and were not adulterated with benzene, a known human carcinogen.

185.    As a result of Defendant's violations, Plaintiff Kerns and members of the Montana Sub-Class have suffered damages because: (a) they paid a premium price in the amount of the full purchase price of the Products based on Defendant's deceptive conduct, and (b) the Products do not have the characteristics, uses, benefits, or qualities promised.

186.     Plaintiff Kerns and the Montana Sub-Class members are entitled to actual damages and their reasonable attorney's fees. Mont. Code § 13-14-133.

## COUNT IX

### Unjust Enrichment
### On Behalf of Plaintiffs and the Classes

187.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

188.     Plaintiffs bring this claim on behalf of themselves and the Classes.

189.     This claim is brought in the alternative pursuant to the laws of the state of Florida, or in the alternative, pursuant to the laws of the various Subclasses.

190.     Plaintiffs, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products.

191.     Defendant voluntarily accepted and retained this benefit.

192.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

193.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Classes, because Plaintiffs, and members of the Classes, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

194.     Defendant was unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the

Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would not have purchased the Products had they known the true facts.

195.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

196.    Finally, Plaintiffs and members of the Classes may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

**COUNT X**

**<u>Violation of State Consumer Fraud Acts</u>**
**On Behalf of Plaintiffs and the Consumer Fraud Multi-State Subclass**

197.    Plaintiffs incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

198.    Plaintiffs bring this claim individually and on behalf of the members of the Consumer Fraud Multi-State Subclass against Defendant.

199.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Subclass prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

200.    Plaintiffs and Consumer Fraud Multi-State Subclass members have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass because Plaintiffs and Consumer Fraud Multi-State Subclass members have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

201.    Defendant engaged in unfair conduct, including but not limited to selling adulterated and misbranded products in violation of the FDCA.

202.    Defendant engaged in deceptive conduct, including but not limited to misrepresenting that the Products did not contain or did not risk containing benzene, and failing to disclose that the Products contained or risked containing benzene.

203.    Defendant intended that Plaintiffs and Consumer Fraud Multi-State Subclass members would rely upon its unfair and deceptive conduct and a reasonable person would, in fact, be misled by this deceptive conduct described above.

204.    Given Defendant's position in the health and beauty market as an industry leader, Plaintiffs and reasonable consumers trusted and relied on Defendant's representations and omissions regarding the presence of benzene in the Products.

205.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and Consumer Fraud Multi-State Subclass members have sustained damages in an amount to be proven at trial.

206.    In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorneys as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted

herein;

  D.  For compensatory, statutory, and punitive damages in amounts to be determined by

the Court and/or jury;

  E.  For prejudgment interest on all amounts awarded;

  F.  For an order of restitution and all other forms of equitable monetary relief;

  G.  For injunctive relief as pleaded or as the Court may deem proper; and

  H.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees,

expenses, and costs of suit.

## <u>DEMAND FOR JURY TRIAL</u>

  Plaintiffs and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P.

38(b), of all issues so triable.

 Dated: March 29, 2023.

        Respectfully submitted,

        */s/ Kristen Lake Cardoso*
        Kristen Lake Cardoso (FBN 44401)
        Jeff Ostrow (FBN 121452)
        Jonathan M. Streisfeld (FBN 117447)
        **KOPELOWITZ OSTROW FERGUSON**
        **WEISELBERG GILBERT**
        One West Las Olas Blvd., Suite 500
        Fort Lauderdale, FL 33301
        Telephone: (954) 525-4100
        ostrow@kolawyers.com
        cardoso@kolawyes.com
        streisfeld@kolawyers.com

        Sarah N. Westcot (FBN 1018272)
        Stephen A. Beck (FBN 1010183)
        Jonathan L. Wolloch (FBN 1039105)
        **BURSOR & FISHER, P.A.**
        701 Brickell Avenue, Suite 1420
        Miami, FL 33131
        Telephone: (305) 330-5512
        swestcot@bursor.com

sbeck@bursor.com
jwolloch@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Gary Klinger (*pro hac vice* forthcoming)
227 W. Monroe Street
Chicago, IL 60606
Tel: (866) 252-0878
Email: gklinger@milberg.com
rbusch@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III (*pro hac vice* forthcoming)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 483021
Tel: (313) 303-3472
Email: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Erin J. Ruben (*pro hac vice* forthcoming)
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Email: eruben@milberg.com

**LAUKAITIS LAW FIRM LLC**
Kevin Laukaitis (*pro hac vice* forthcoming)
737 Bainbridge Street #155
Philadelphia, PA 19147
Email: klaukaitis@laukaitislaw.com

**GABRIELLI LEVITT LLP**
Michael J. Gabrielli (*pro hac vice*)
2426 Eastchester Rd., Ste. 215
Bronx, NY 10469
Tel: (718) 708-5322

Email: michael@gabriellilaw.com

**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
Brian Aylstock (FBN 78263)
R. Jason Richards (FBN 18207)
803 N. Palafox Street
Pensacola, FL 32501
Telephone: 850-916-7450
Facsimile: 850-916-7449
E-mail: baylstock@awkolaw.com
jrichards@awkolaw.com

**FITZGERALD JOSEPH LLP**
Paul K. Joseph (*pro hac vice*)
paul@fitzgeraldjoseph.com
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**POULIN | WILLEY | ANASTOPOULO,
LLC**
Paul Doolittle (*pro hac vice*)
Blake Abbott *(pro hac vice)*
32 Ann Street
Charleston, SC 29403
(P): (843) 614-8888
(F): (843) 494-5536
Email: pauld@akimlawfirm.com
blake@akimlawfirm.com

*Attorneys for Plaintiffs and the Putative
Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2023, I electronically filed the foregoing with the Clerk

of the Court through the CM/ECF system which will send a notice of electronic filing to all counsel

of record.

*/s/ Kristen Lake Cardoso*
Kristen Lake Cardoso